**FILED**

**May 20, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 7:58 AM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE BY INTERCHANGE

| | |
|---|---|
| Linda Ephran,<br>　　　　Employee,<br>v.<br><br>Trane Commercial Systems<br>　　　　Employer,<br>And<br><br>Travelers Indemnity Company,<br>　　　　Insurance Carrier. | Docket No.  2015-06-0962<br><br>State File No. 64028-2015<br><br><br>Judge Robert Durham |

## EXPEDITED HEARING ORDER DENYING BENEFITS
### (REVIEW OF THE FILE)

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing (REH) filed by the employee, Linda Ephran, pursuant to Tennessee Code Annotated section 50-6-239 (2015) to determine if the employer, Trane Commercial Systems (Trane), is obligated to provide workers' compensation benefits. Pursuant to Rule 0800-02-21-.02(13) (2015) of the Tennessee Compilation Rules and Regulations, Ms. Ephran requested the Court issue a ruling based on a review of the file without an evidentiary hearing. Trane voiced no objection. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes it needs no further information to render judgment.

The dispositive issue is whether Ms. Ephran's bilateral knee complaints arise primarily out of and in the course and scope of her employment with Trane. The Court finds the evidence submitted by Ms. Ephran is insufficient to establish she is likely to prevail at a hearing on the merits regarding the compensability of her alleged injury, thus requiring the Court to deny her request for benefits.[1]

---

[1] Additional information regarding the technical record and exhibits is attached to this Order as an Appendix.

1

## History of Claim

Ms. Ephran is a fifty-year-old resident of Montgomery County, Tennessee who has worked on a production line for Trane for twenty years. (T.R. 1.) In a statement attached to the Petition for Benefit Determination (PBD), Ms. Ephran alleged her job required her to lean over her workstation, causing her knees to hit the sharp wooden base of her unit throughout the workday. (T.R. 1 at 4.) She stated the situation caused severe soreness and shooting pain in her knees, and on April 6, 2015, she notified her supervisor, Joe Bailey, of her condition. *Id.*

The following morning her right knee was swollen and painful. *Id.* Ms. Ephran went to the company nurse who began a regimen of allowing her to ice her knee every two hours. On April 8, Ms. Ephran completed an "Employee Occurrence Report." (Ex. 6.) Trane then took Ms. Ephran off the job she claimed injured her knees. (T.R. 1 at 4.) A week passed, and Trane began working mandatory ten-hour days, which Ms. Ephran alleged prevented her knees from healing. *Id.* In the record provided, Ms. Ephran included statements from several co-workers who observed the swelling and pain in Ms. Ephran's knees, and her frequent trips to the nursing station for ice treatments. She also included pictures of her workstation. (Ex. 9, 10.) On August 3, after several weeks of treating her knees with ice, heat, and compression, Ms. Ephran asked to see a doctor. *Id.* Trane provided her with a panel of physicians, and she chose Dr. Stephen Kent, who was located at the Trane facility. (Ex. 1.)

Dr. Kent examined Ms. Ephran on August 3. According to his record, Ms. Ephran complained of bilateral knee pain with the left being greater than the right, and some swelling in her left knee. (Ex. 2 at 1.) Dr. Kent diagnosed her with "bilateral knee pain, suspect arthritis." He limited her work to "no overtime." *Id.* Ms. Ephran returned to Dr. Kent on August 5, and Dr. Kent's diagnosis and restrictions remained the same. *Id.* at 3. He ordered x-rays of Ms. Ephran's left knee, which he noted revealed moderate arthritis. *Id.* at 4.

On August 13, Ms. Ephran gave a recorded statement to Schuyler Lampley, adjuster for Trane's insurance carrier. (Ex. 3.) Ms. Ephran stated on April 4, the parts she had to put together required her to lean against the wooden edge of the base at her station, which "was cutting into [her] kneecap" all day long so that "she couldn't even walk" the next day. (Ex. 3 at 5.) She further stated she received ice treatment from the plant nurse and was taken off that station. Her knees began feeling better but her pain returned when she began working ten-hour shifts. *Id.* at 5, 6. Her knee pain decreased when Dr. Kent placed her back on eight-hour workdays, and, at the time of the statement, she felt her knees were improving. *Id.* at 11. Ms. Ephran further stated she had never experienced any problems with either knee prior to this episode. *Id.* at 9.

On August 19, Dr. Kent responded to a letter from Ms. Lampley regarding

causation. (Ex. 2 at 7.) In the letter, he circled "no" when asked if, in his opinion to a reasonable degree of medical certainty, "Ms. Ephran's diagnosis and the need for treatment arises primarily out of and in the course and scope of her employment with Trane." Based on this response, Trane filed a Notice of Denial on August 20, citing there was "no medical evidence of work-related injury" as its reason. (Ex. 4.)

Following the denial, Ms. Ephran treated with her primary care physician, who referred her to an orthopedist, Dr. Kurtis Kowalski. (Ex. 5 at 1.) Dr. Kowalski saw Ms. Ephran on August 27 for bilateral knee pain, left worse than right, which had been present for approximately six weeks. *Id.* On examination, Dr. Kowalski noted moderate swelling in Ms. Ephran's left knee as well as tenderness along the joint line. The right knee was also tender, but with mild swelling. *Id.* Dr. Kowalski diagnosed Ms. Ephran with "mild arthritis aggravation versus possible meniscal tear on the medial aspect of the left given the effusion." *Id.* As a result, he ordered an MRI of the left knee. *Id.*

The MRI, performed on September 1, revealed an "obliquely oriented longitudinal tear within the posterior horn of the medial meniscus," as well as "moderate chondromalacia within the medial joint compartment and involving the lateral patellar facet." (Ex. 5 at 4.) Based on the MRI, Dr. Kowalski opined that most of Ms. Ephran's symptoms "are coming from the medial meniscal tear" and recommended a "left knee arthroscopy with medical meniscus debridement." *Id.* at 5. Ms. Ephran also included various medical bills and payment summaries regarding medical expenses incurred through Dr. Kowalski's care. (Ex. 6.)

Ms. Ephran sent Dr. Kowalski's records to Ms. Lampley, who forwarded them to Dr. Kent for review. On September 13, 2015, Dr. Kent noted in his records:

> MRIs from TOA reviewed. Employee found to have meniscal tear left knee with moderate sized popliteal cyst. These are expected findings with osteoarthritic degenerative changes of knees, especially when associated with obesity. Employee reported no injury to her knee and—it is this physician's opinion—the meniscal tear is not work-related.

(Ex. 2 at 4.)

Ms. Ephran filed a Petition for Benefit Determination (PBD) on November 16, 2015, after Trane continued to deny her claim. (T.R. 1.) The parties were unable to reach a mediated agreement, and the Mediator filed a DCN on December 11, 2015. (T.R. 2.) Ms. Ephran filed an REH seeking a decision on record review on April 14, 2016. (T.R. 3.) On April 28, 2016, the Court sent a Docketing Notice to the parties regarding the contents of the record before it. (T.R. 4.) Neither party raised any objection to the documents contained in the record or offered any additional evidence.

3

## Findings of Fact and Conclusions of Law

The Court must interpret Workers' Compensation Law fairly, impartially, and by basic principles of statutory construction, favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.,* *see also* Tenn. Code Ann. § 50-6-239(d)(1) (2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

In order to prevail, Ms. Ephran must establish she suffered an accidental injury that was "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015). She alleges that, on April 4, 2015, she suffered injuries to her knees, including a medial meniscal tear in her left knee, by leaning her knees against the sharp edge of a board at her workstation in order to reach the parts she was assembling. In support of this allegation, Ms. Ephran provided undisputed evidence that:

- The exposed board did cut into her knees as she leaned into it to do her job;
- She had never experienced knee pain prior to April 4;
- She has experienced pain and swelling ever since, particularly in her left knee; and,
- She does in fact, have a torn medial meniscus in her left knee.

However, in order to establish she sustained a compensable injury, Ms. Ephran must establish to a "reasonable degree of medical certainty" that in the "opinion of the physician" her condition arose primarily out of and in the course and scope of her employment. *See* Tenn. Code Ann. § 50-6-102(13) (2015). Thus, lay testimony must generally be corroborated by expert medical testimony in order to meet the burden of

4

proof regarding causation. *See Scott, supra,* at *12.

In this instance, the only medical proof offered regarding causation was that of Dr. Kent, the authorized treating physician. The authorized physician's opinion regarding causation is entitled to a presumption of correctness. Tenn. Code Ann. § 50-6-204(a)(3) (2015). Dr. Kent specifically opined on two occasions that he did not believe Ms. Ephran's bilateral knee condition, including the medial meniscal tear in her left knee, was work-related. Dr. Kowalski, while diagnosing Ms. Ephran with a medial meniscus tear in her left knee, did not provide any opinion as to whether her condition causally related to Ms. Ephran's employment with Trane. Thus, there is no medical evidence sufficient to rebut the presumption of correctness afforded Dr. Kent's opinion, and therefore, the medical records provided by Ms. Ephran do not establish she is likely to prevail on the issue of causation at a hearing on the merits. *McCord, supra,* at *7-8.

For the reasons stated above, the Court finds Ms. Ephran failed to provide sufficient evidence from which the trial court can determine she is likely to prevail at a hearing on the merits regarding causation. As a result, her request for workers' compensation benefits is denied at this time.

IT IS, THEREFORE, ORDERED that:

1.    Ms. Ephran's request for workers' compensation benefits is denied at this time.

2.    This matter is set for Initial Hearing on June 28, 2016, at 9:00 a.m.

**ENTERED THIS THE 20th DAY OF MAY, 2016.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

**Initial Hearing:**

An Initial Hearing has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 855-689-9049 to participate in the Initial Hearing.

Please Note:    You must call in on the scheduled date/time to participate.

5

**Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. Choice of Physician form
2. Medical records from Stephen Kent, M.D.
3. Ms. Ephran's recorded statement
4. Notice of Denial
4. Medical records of Kurtis Kowalski, M.D.
5. Various medical expenses
6. Employee Occurrence Report
7. Witness statements and photographs
8. Letter from Schuyler Lampley to Ms. Ephran denying her clam

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Notice of Appearance
5. Show Cause Order
6. Order on Show Cause Hearing
7. Transfer Order
8. Docketing Notice
9. Trane's position statement
10. Ms. Ephran's position statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Benefits was sent to the following recipients by the following methods of service on this the 20th day of May, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Linda Ephran | X | | X | 129 Hadley Drive, Apt. B, Clarksville, TN 37042 lindaephran@hotmail.com |
| Ritchie Pigue | | | X | Rpigue@tpmblaw.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9